809 So.2d 151 (2001)
Alan P. WILEY
v.
CITY OF NEW ORLEANS, John Doe and Christy Lynn Curl
No. 2000-CA-1544.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 2001.
Opinion on Limited Grant of Rehearing January 30, 2002.
*153 John D. Rawls, New Orleans, Counsel for Plaintiff/Appellant.
Mavis Early, City Attorney, Nolan P. Lambert, Chief of Research of Opinions, John Smith, Deputy City Attorney, Frank B. Hayne, III, Assistant City Attorney, New Orleans, Counsel for Appellee.
Court composed of Judge STEVEN R. PLOTKIN, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS Jr.
Judge MICHAEL E. KIRBY.
In this case the Plaintiff, Alan P. Wiley, appeals the allocation of fault by the trial court to the unidentified driver. Defendant, the City of New Orleans, appeals the application of the law of evidence at trial and alleges the evidence was insufficient to establish negligence by a preponderance of the evidence.

STATEMENT OF FACTS
On July 5, 1993, Plaintiff Alan P. Wiley was one of two pedestrians on the sidewalk on the river side of Dauphine walking toward Franklin Avenue in an upriver direction. Suddenly, the stolen vehicle of former defendant Christy Curl, which was traveling in a downtown direction on Dauphine, hit a parked car and then left the roadway, jumped the curb, and struck Plaintiff and barely missed the other pedestrian, his friend George Hughes. The vehicle would have struck Mr. Hughes as well, were it not for the fact that he just had enough time to jump out of the way. The driver of the vehicle fled on foot.
The vehicle struck Mr. Wiley and drove him into a fence and gate between two houses. The vehicle actually struck one of the houses as well. The owner of that house, testified that it "shook like a banging noise" when the vehicle struck it. When the homeowner ran to the front to see what had happened, she saw that the vehicle had struck the other half of her shotgun double home after smashing her parked car. She found Mr. Wiley in the alley between her house and the one next door.
Mr. Wiley suffered a concussion and at least four separate injuries. One was an injury to his right hip. He broke a tooth in the lower back jaw. He broke his right little finger, which is now crooked. Since Mr. Wiley's profession is a pianist, musician and entertainer, the deformed finger is a serious concern. His gravest injury was a severe closed head brain injury that effectively destroyed his ability to remember.
Mr. Wiley is the first appellant in a double appeal. He does not challenge the Trial Court's damage award. Mr. Wiley filed suit on June 30, 1994, suing: the City of New Orleans as owner and maintainer of Dauphine Street and its intersection with Franklin Avenue; John Doe, the unknown motorist who fled the accident scene; and Christy Lynn Curl, owner of the vehicle which was stolen the evening before this accident. On November 21, 1996, without opposition, the Trial Court granted Summary Judgment in favor of Ms. Curl. The Trial Court conducted a bench trial on two separate days. Besides Mr. Wiley, Mr. Hawes and the home owner, the Plaintiff called James R. Clary, Sr., whom the Court accepted as an expert in the field of land surveying and the design, construction, maintenance and safety of public roads and streets. Three witnesses *154 testified for the Plaintiff by deposition: Gary J. Edwards, a music producer; Warren Pendergast, M.D., Mr. Wiley's treating psychiatrist; and Manley W. Kilgore, II, M.D., Mr. Wiley's treating neurologist. The trial court also considered medical records and City records on this intersection.
The trial court entered its Judgment and Reasons for Judgment on December 21, 1999, setting Mr. Wiley's damages at six hundred thousand dollars ($600,000.00) and apportioning fault one-third (1/3) to the City and two-thirds (2/3) to the unknown thief/driver.

ISSUES PRESENTED
There are three issues that lie at the heart of the resolution of this matter. First, whether the trial court was within its discretion in assigning the percentages of fault. Second, whether the "fifty-percent (50%) rule" of C.C. art. 2324(B) as it existed prior to the amendment in 1996 applies. And finally, whether the cap on pre-judgment interest applies, under LA. R.S. 13:5112(C).

STATEMENT OF THE LAW
The assignment of percentages of fault is a factual question. Factual findings are afforded much weight in appellate courts and cannot be overturned unless there exists manifest error.
In our three-tiered judicial system, findings of fact are allocated to the trial courts. It is a well-settled principle that an appellate court may not set aside a trial court's finding of fact unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly wrong. Rosell, supra at 845; Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985); Arceneaux, supra at 1333. Where the factfinder's conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, supra at 844. The reviewing court must always keep in mind that if a trier of fact's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if convinced that if it had been sitting as trier of fact, it would have weighed the evidence differently. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La. 1990).
For the reviewing court, the issue to be resolved is not whether the trier of fact was wrong but whether the factfinder's conclusions were reasonable. Stobart, supra at 883; Theriot v. Lasseigne, 640 So.2d 1305 (La.1994).
Mistich v. Volkswagen of Germany, Inc. 95-0939, (La.1/29/96), 666 So.2d 1073, 1077.
The City was sued on the theory of negligent design, construction and maintenance of a dangerous and unfit zigzag intersection. It is a permissible view of the evidence presented at trial that the City had some fault for maintaining a misaligned street that forced the driver to zigzag, coupled with a shifting crown height *155 or slope that had the effect of throwing a speeding driver to the curb.
We have reviewed the record and find no manifest error in the finding of the trial court. The assignment of two-thirds of the fault on the phantom driver/thief and one-third of the fault to the City was within the trial court's discretion.
The City also argues that Mr. Clary's expert testimony should not have been admissible because it was based upon inadmissible hearsay, i.e. police accident reports. However, the 1988 official comments (d) to the Louisiana Code of Evidence Article 703 states:
Under this Article the facts or data underlying the expert witness' opinion may properly be: ... (3) under designated circumstances, facts or data not admissible in evidence (because, for example, their source is inadmissible hearsay), if they are of a kind reasonably relied upon by experts in the particular field in arriving at their opinions or inferences.... Whether the facts or data may be "reasonably relied upon" in this fashion is a question for the court under Article 104(A). See 3 J. Weinstein & M. Berger, Weinstein's Evidence 703[03](1984).
We find no error in the trial court's ruling that the evidence was inadmissible hearsay per se, but could be used as a basis for expert testimony.
The next issue that we must address is whether "the fifty-percent rule" applies. The Judgment ascribes one-third of all fault to the City and two-thirds fault to the unknown driver. This accident occurred on July 5, 1993. The Plaintiff filed his Petition for Damages on June 30, 1994.
Act 3 of the First Extraordinary Session of 1996 amended Civil Code Article 2324 to repeal solidary liability among tortfeasors, but left open whether the amendment was retroactive. In Aucoin v. State Department of Transportation and Development, 97-1967, 10 (La.4/24/98), 712 So.2d 62, 67, the Louisiana Supreme Court settled that question:
That shift from solidary liability to joint and several obligation altered the existing rule. Moreover, since the amendment resulted in changing the amount of damages recoverable, the change was clearly substantive. [citation omitted] As such, the amendment can have only prospective application. [citation omitted] Therefore, the applicable article 2324(B) was that which existed at the time of the accident.
Prior to the 1996 amendment, Louisiana Civil Code Procedure Article 2324(B) stated:
B. If liability is not solidary pursuant to Paragraph A, or as otherwise provided by law, then liability for damages caused by two or more persons shall be solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages; however, when the amount of recovery has been reduced in accordance with the preceding Article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of fault has been attributed. Under the provisions of this Article, all parties shall enjoy their respective rights of indemnity and contribution. Except as described in Paragraph A of this Article, or as otherwise provided by law, and hereinabove, the liability for damages caused by two or more persons shall be a joint, divisible obligation, and a joint tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless *156 of such other person's insolvency, ability to pay, degree of fault, or immunity by statute or otherwise.
Former Article 2324(B) applies to this case in full. The City's fault combined with the phantom driver's fault to cause this accident. That combination of fault makes the City and the phantom driver joint tortfeasors according to this Article. The judgment creditor, Mr. Wiley, was completely free from fault.
In accordance with C.C. art. 2324(B) as it existed prior to its 1996 amendment, so that Mr. Wiley recovers half of his damages, we amend the trial court's Judgment to increase his recovery to $300,000.00 (i.e. 50% of $600,000.00).
Finally, the Judgment awards "judicial interest from the date of demand until paid" but does not state whether the applicable rate is the full fluctuating legal rate (per La.C.C. Art. 2924), or the capped rate for suits against the State and its political subdivisions (per La. R.S. 13:5112(C)).
The Louisiana Supreme Court declared former Louisiana Revised Statute 13:5112(C) unconstitutional in Ly v. State, 92-2312 (La.2/25/94), 633 So.2d 1223, and Rick v. State, 93-1776, 93-1784 (La.1/14/94), 630 So.2d 1271. In both instances the State cap was declared an unconstitutional exercise of sovereign immunity in violation of Article XII, Section 10, Constitution of Louisiana.
Louisiana Revised Statute 13:5112(C) was amended on November 23, 1995. Our brethren in the First Circuit Court of Appeal of Louisiana ruled that this statute does not apply retroactively.
... we are again guided by the supreme court's decision in Long, and look to the intent of the legislature to determine whether the amendment retroactively validated the six percent prejudgment interest rate contained in La. R.S. 13:5112. Upon reviewing the language of the amendment and Act 828, we find nothing to indicate that the legislature intended to give La. R.S. 13:5112 retroactive effect. Compare Long, 595 So.2d 636 (La.1992) (language of the amendment and act demonstrated the legislature's intent that the statute be given retroactive effect). Because the amendment did not expressly ratify former La. R.S. 13:5112 and because there is no evidence tending to show that the legislature intended to give retroactive application to the new statute, we must conclude that the six percent prejudgment interest rate contained in La. R.S. 13:5112 does not apply.
[3] [96 1586 La.App. 1 Cir. 7] Accordingly, we hold that the cap on general damages contained in La. R.S. 13:5106 and the cap on legal interest contained in La. R.S. 13:5112 do not apply to cases, such as this, which were still pending between the time that these statutes were declared unconstitutional by Chamberlain [v. State Department of Transportation and Development (1993), 624 So.2d 874] and Rick and the effective date of the amendment to La. Const. Art. XII, § 10(C) and Acts 1995, No. 828.
Lewis v. State, 96-1586, 6-7 (La.App. 1 Cir. 12/20/96), 685 So.2d 640, 643
For the reasons assigned by the Lewis court, we hold that the 1995 reenactment of La.R.S. 13:5112(C) does not apply retroactively to this 1994 lawsuit arising out of a 1993 accident. As such, Mr. Wiley is entitled to full judicial interest from date of judicial demand until paid.

SUMMARY
In conclusion we find the trial court did not err in its assignment of percentages of fault and that it was correct in allowing *157 plaintiff's expert to testify as to opinions based upon police reports that were inadmissible as hearsay. Plaintiff is entitled to recover from the defendant City of New Orleans 50% of his damages, as found by the trial court, despite the fact that the City was found to be only one-third at fault for the accident. Finally, plaintiff is entitled to judicial interest from date of judicial demand until paid irrespective of La. R.S. 13:5112(C).
AFFIRMED AS AMENDED.

ON APPLICATION FOR REHEARING
Judge MICHAEL E. KIRBY.
We grant rehearing in this matter limited to Mr. Wiley's constitutional challenge to civil Code article 2323 and his request for costs. These issues were raised in his original brief and should have been addressed in our original opinion. We take each argument in the order in which it was presented in his brief.

CONSTITUTIONALITY OF CIVIL CODE ARTICLE 2323

LEGISLATIVE INVASION OF INHERENT JUDICIAL POWER
We believe Mr. Wiley reads the language "the appropriateness, and indeed the necessity, of quantifying the fault of a particular non-party ... is inherently a question to be determined by the courts" in Cavalier v. Cain's Hydrostatic Testing, Inc., 94-1496 (La.6/30/95) at 7, 657 So.2d 975 at 980-81 out of context. It is quite clear from a complete reading of the sentence in question that the only reason quantification of third party fault is a question for the court in that case is because the legislature failed to specify which nonparties should have their fault quantified.[1]
In Keith v. U.S. Fidelity & Guar. Co., 96-2075, p. 5 (La.5/9/97), 694 So.2d 180, 182, the Supreme Court of Louisiana stated:
Having reviewed this act of the First Extraordinary Session of the 1996 Legislature, it is evident that the Legislature met the concerns we expressed in Cavalier regarding how it intended that employer fault be treated in third-party tort actions.
Thus we conclude the Supreme Court acknowledged the right of the legislature to address the issue. It was only because the legislature had not done so at the time of Cavalier that the Supreme Court exercised its judicial power to adjudicate a case in the absence of specific guidance from the legislature. We find no invasion of any inherent judicial power.

THE LEGISLATURE CANNOT OVERRULE A JUDICIAL DECISION CONTROLLING THE POWER TO ADJUDICATE:
We do not agree that the legislature "overruled a judicial decision controlling the power to adjudicate." Article 1 of the Louisiana Civil Code provides that there are two sources of law: legislation and custom. Legislation is the solemn expression of legislative will. La. C.C. art. 2. As comment (a) to Article 1 makes clear, "However, as in all codified systems legislation is the superior source of law in Louisiana." Jurisprudence is only a secondary or persuasive source of law. When the Supreme Court in Cavalier, supra, noted that it was exercising its inherent *158 power because the legislature had not addressed the issue, the legislature then exercised its superior prerogative to address the issue.

ARTICLE 2323 VIOLATES PROCEDURAL DUE PROCESS
We are unimpressed with Mr. Wiley's argument that article 2323, by permitting the adjudication of the liability of a non-party's fault and assessing that fault against the plaintiff, violates Article I, Section 2 of the state constitution, the guarantee of procedural due process of law. First, at trial a plaintiff has the same rights as all other parties to call and cross examine witnesses on the issue of a third person's fault. We do not construe the effect of a non-party's fault as an assessment against the plaintiff. Simply, he is not permitted to recover damages from someone the trier of fact concluded was not responsible for that portion of his damages.

RETROACTIVE APPLICATION OF ARTICLE 2323 IS UNCONSTITUTIONAL
Mr. Wiley attempts to distinguish the holding in Keith, supra, on the basis that the case came to the Supreme Court "in a procedural posture on a procedural question".[2] However, Mr. Wiley disregards the following language in Keith:
After carefully considering Act 3, we find the legislative amendment of La. Civ.Code arts. 2323 was procedural legislation. Act 431 of 1979 amended and reenacted La.Civ.Code arts 2103, 2323 and 2324 to usher a comparative fault system into Louisiana. This act eliminated the doctrine of contributory negligence and provided the framework for a comprehensive scheme of loss apportionment in multi-party litigation. [Citation omitted.] Since the adoption of a pure comparative fault system, it has been the task of the factfinder to allocate shares of negligence. [Citation omitted.]
Viewing the applicability of Act 3 to the case sub judice, it is clear that the substantive right to allocate fault was created in 1979 with the introduction of comparative fault. As such, Act 3 simply delineates a method for enforcing that substantive right as particularly applied to the statutory employer.
Accordingly, we conclude that the legislative changes reflected in Act 3 are procedural, and can be applied retroactively.

Keith v. U.S. Fidelity and Guar, Co., 96-2075, p. 7 (La.5/9/97), 694 So.2d at 183
We do not believe Mr. Wiley had a substantive right to have a non-party's fault assigned to the parties who were found at fault. His reliance on Judge Thibodeaux's concurring opinion in Crooks v. Metropolitan Life Insurance Co., XXXX-XXXX (La. App. 3 Cir. 1/17/01), 779 So.2d 966, is misplaced for two reasons. First, the legislature there had abolished plaintiffs' cause of action after they had filed suit, thus depriving them of a vested right. As noted in Keith, supra, the statutory scheme for comparative negligence came into existence in 1979, long before Mr. Wiley's accident. In 1996 the legislature only modified the allocation of fault procedures. This did not deprive plaintiff of his cause of action or of a vested right. Secondly, reliance on Crooks is misplaced because the Supreme Court has reversed the decision and remanded the matter to the district court for reconsideration in light of another case. See Crooks v. Metropolitan *159 Life Insurance Co., XXXX-XXXX (La.5/25/01), 785 So.2d 810.

COURT COSTS
On authority of La. C.C.P. art. 2164 all costs of this appeal are taxed against The City of New Orleans.

CONCLUSION
For the above reasons we find Civil Code article 2323 is constitutional. Costs are taxed against the City of New Orleans. In all other respects our original opinion remains in full force and effect.
LIMITED REHEARING GRANTED; AFFIRMED AS AMENDED.
NOTES
[1] The complete sentence is:

"However, since the Legislature did not specify which non-parties should have their fault quantified by the jury, the appropriateness, and indeed the necessity, of quantifying the fault of a particular non-party as a substantive requirement of the overall statutory scheme of comparative fault is inherently a question to be decided by the courts." (Emphasis added.)
[2] The defendant in Keith had alleged non-party fault in its answer and plaintiff moved to strike the allegation. The trial court granted the motion and the Third Circuit affirmed.